IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KELLY CRAWFORD,

                Plaintiff,

v.                                   CIVIL ACTION NO.   2:23-cv-00585

CAMRYN T. DANIELS, et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Camryn T. Daniels, the Boone County Sherriff's Office, and the Boone County Commission's partial motion to dismiss.   (ECF No. 16.)   For the reasons more fully explained below, the motion is **GRANTED**.

### I.     BACKGROUND

A.  Facts

Just before midnight on August 30, 2022, Defendant Camryn T. Daniels ("Defendant Daniels"), a deputy of the Boone County Sheriff's Office ("Defendant BCSO"), received a call about a disturbance at a home in Wharton, West Virginia.   (ECF No. 1 at 3–4, ¶¶ 13–14.)   The dispatcher told him that Plaintiff Kelly Crawford ("Plaintiff") was the one causing the disturbance.   (*Id.* at 3–4, ¶ 14.)   Defendant Daniels promptly headed to the provided address.   (*Id.*)

Once there, he spotted Plaintiff, a five-foot-four-inch, 119-pound woman.[1]   (*Id.* at 4, ¶¶ 15–16.)   She was foaming at the mouth and saying "I'm Kelly, and I'm dead."   (*Id.* at 4, ¶ 15.)   Defendant Daniels tried to handcuff Plaintiff but, rather than complying, she tried to punch Defendant Daniels in the face.   (*Id.* at 4, ¶ 17.)   So he tasered her.   (*Id.*)   That, of course, dropped her.   (*Id.*)   Defendant Daniels seized the moment and slipped the cuffs on Plaintiff.   (*See id.* at 4, ¶ 18.)   He then ordered her to get in the patrol car.   (*See id.*)   She refused.   (*Id.*)   So he punched her in the face.   (*Id.*)   Defendant Daniels ultimately got Plaintiff in the backseat of his patrol car (the complaint does not say how), and he left the scene.   (*See id.* at 4, ¶¶ 19–20.)

Defendant Daniels drove the car while Plaintiff sat handcuffed in the backseat.   (*Id.* at 4, ¶ 20.)   Before long, though, Plaintiff leaned forward and tried to bite Defendant Daniels.   (*Id.*)   He shoved her back in the seat, stopped the car, got out, and opened her door.   (*Id.* at 4, ¶¶ 20–21.)   Plaintiff, seeing the door was open, tried to swing her legs out.   (*Id.* at 4, ¶ 21.)   Defendant Daniels, hoping to keep her contained, punched her in the face, again.   (*Id.*)   He then hopped back in the car and resumed driving.   (*Id.* at 4–5, ¶ 22.)   Undeterred, Plaintiff tried to bite Defendant Daniels again.   (*Id.*)   So Defendant Daniels hit her in the face, this time with an elbow.   (*Id.*)   That, perhaps unsurprisingly, gave Plaintiff a nosebleed.   (*Id.*)   She began hitting her head off the car's windows.   (*Id.*)   Defendant Daniels, evidently tired of using physical force, pepper sprayed her.   (*Id.*)

Defendant Daniels then met up with Defendant Joe Marino ("Defendant Marino"), a City of Madison Police Officer, in a local business parking lot.   (*Id.* at 5, ¶ 25.)   At this rendezvous, Defendant Daniels handed Plaintiff over to Defendant Marino, who drove her a few miles away to

---

[1] The complaint does not provide Plaintiff's age.

Boone Memorial Hospital in Madison, West Virginia.  (*Id.*)  Plaintiff was later transferred to Charleston Area Medical Center in Charleston, West Virginia.  (*Id.* at 5, ¶ 27.)  Once there, the toll of Defendant Daniels' beating became apparent: Plaintiff suffered a laundry list of facial injuries, which required surgery to fix.[2]  (*Id.*)

    B.  Procedural History

Plaintiff filed suit in this Court on August 30, 2023, invoking this Court's jurisdiction under 28 U.S.C. § 1331.  (ECF No. 1.)  She sued Defendant Daniels, Defendant BCSO, and the Boone County Commission ("Defendant BCC"), collectively referred to as "the Boone County Defendants."  (*Id.* at 2, ¶¶ 2–4.)  She also sued Defendant Marino, the City of Madison, the City of Madison Police Department, James Hudson (Madison's mayor) in his official and private capacities, and Chet Burgess (Madison's Chief of Police) also in his official and private and private capacities, collectively referred to as "the Madison Defendants."  (*Id.* at 2–3, ¶¶ 5–9.)  Her complaint brought the following eight claims:

- Count I – Excessive Force in Violation of the Laws and Constitutions of West Virginia and the United States [Fourth, Eighth, and Fourteenth Amendments], brought against Defendant Daniels

- Count II – Excessive Force in Violation of the Laws and Constitutions of West Virginia and the United States, brought against Defendant Marino

- Count III – Vacarious [sic] Liability of Defendants Boone County Commission and Boone County Sheriff's Office

- Count IV – Vacarious [sic] Liability of Defendants City of Madison Police Department, City of Madison, Chet Burgess, and James Hudson

- Count V – Assault and Battery, brought against Defendant Daniels

---

[2] These injuries included: a right pterygoid fracture, bilateral maxillary sinus fractures, bilateral orbital floor fractures, a left orbital wall fracture, a left zygomatic arch fracture, a bilateral nasal bone fracture, a nasal septum fracture, and a bilateral periorbital hematoma.  (ECF No. 1 at 5, ¶ 27.)

- Count VI – Assault and Battery, brought against Defendant Marino

- VII – Negligence, brought against the Boone County Defendants

- VIII – Negligence, brought against the Madison Defendants[3]

(*Id.* at 7–18, ¶¶ 40–94.)   She seeks compensatory and punitive damages, attorneys' fees and costs, pre- and post-judgment interest, and any other relief this Court may deem proper.   (*Id.* at 18–19.)

On November 16, 2023, the Boone County Defendants filed a partial motion to dismiss, arguing that Plaintiff, for certain claims, had failed to state a claim upon which relief may be granted.[4]   (ECF No. 16.)   Plaintiff responded on November 20, 2023, (ECF No. 18), and the Boone County Defendants replied on November 27, 2023, (ECF No. 20), making the matter ripe for adjudication.

C.  Plaintiff's Response

Before taking up the Boone County Defendants' motion, though, the Court first finds it necessary to address some issues with Plaintiff's response brief.   First, and most alarming, her response brief defends a complaint she did not file.   That is, rather than addressing the merits of the eight claims her complaint asserted, her response brief defends the following *seven* claims:

- Excessive force against Defendant Daniels and Defendant Marino

- Deprivation of medical care and deliberate indifference against Defendant Daniels

---

[3] The Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

[4] The Courts notes that, although styled as a motion to dismiss under Rule 12(b)(6), the Boone County Defendants' motion is really one for judgment on the pleadings under Rule 12(c).   This is so, the Court finds, because the Boone County Defendants filed their answer more than a month *before* filing their motion to dismiss.   (*Compare* ECF No. 14, *with* ECF No. 16.)   However, for current purposes, this is a distinction without a difference because the Court uses the same test when evaluating Rule 12(b)(6) and Rule 12(c) motions.   *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) (explaining that Rule 12(b)(6) and Rule 12(c) motions are "assessed under the same standard"); *Kokinda v. Foster*, No. 3:21-cv-00154, 2024 WL 715962, *1 n.3 (N.D. W. Va. Feb. 21, 2024).

- Reckless conduct and deliberate indifference brought against Defendant BCC and Defendant BCSO

- Section 1983 *Monell* liability against Defendant BCC and Defendant BCSO

- Assault and Battery against Defendant Daniels and Defendant Marino

- Negligence against all Defendants

- Punitive damages against Defendant Daniels

(ECF No. 18 at 4.)   As a result, Plaintiff's response brief contains many arguments and assertions that are inapplicable, untrue, and, at times, nonsensical.   Second, and relatedly, her response brief also mentions several defenses—judicial estoppel, collateral estoppel, and qualified immunity— that the Boone County Defendants never mentioned, much less raised.[5]   (*Id.* at 1.)   Because Plaintiff's counsel seemingly used the wrong response-brief form, her filing is no more helpful in resolving the Boone County Defendants' motion than a Philips screwdriver is on a flathead screw. Nevertheless, in an effort to mitigate this malpractice, the Court will liberally construe Plaintiff's arguments so as to do justice.

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint.   Fed. R. Civ. P. 12(b)(6).   A plaintiff must allege sufficient facts, which, if proven, would entitle her to relief under a cognizable legal claim.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007).   A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."

---

[5] So, too, does it misname several legal entities, mashing together names of two distinct entities, such as the "City of Madison State Police" and the "United States Supreme Court of Appeals," which shows, as best, inattentiveness, and at worst, a copy-and-paste approach to lawyering.   (ECF No. 18 at 3, 9, 12.)

*Id.* at 570.   In applying this standard, a court must utilize a two-pronged approach.   First, it must separate the legal conclusions in the complaint from the factual allegations.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged."   *Id.*   Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).   A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible."   *Twombly*, 550 U.S. at 555, 570.

### III.   DISCUSSION

The Boone County Defendants' motion attacks Plaintiff's complaint on two grounds. First, Defendant BCSO argues that it must be dismissed as a defendant because it lacks the capacity to sue and be sued.   (ECF No. 17 at 3–5.)   Second, the Boone County Defendants argue that many, but not all, of Plaintiff's purported claims fail as a matter of law.   Specifically, they concede that Plaintiff has pled viable claims for battery and excessive force under the Fourth Amendment. (*See id.* at 8, 18.)   But everything else, they say—her claims for assault, negligence, excessive force under the Eighth and Fourteenth Amendments, and vicarious liability for those constitutional violations—should be dismissed.   (*Id.* at 6–18.)   The Court addresses each Count in turn.[6]

---

[6] In doing so, the Court applies federal law to Plaintiff's constitutional claims and West Virginia law to her state-law claims.   *See Stover v. Coll. of William & Mary in Va.*, 635 F. Supp. 3d 429, 441, 445 (E.D. Va. 2022).

A.  Defendant BCSO

As just noted, Defendant BCSO argues that it must be dismissed from this case because it lacks the capacity to be sued and is thus an improper party.   The Court agrees.

In West Virginia, "only the county commission, as the local governing body for a county, is authorized to sue or be sued."   *Frye v. Lincoln Cnty. Comm'n*, No. 2:20-cv-00403, 2021 WL 243864, at *4 (S.D. W. Va. Jan. 25, 2021); *see also* W. Va. Code § 7-1-1(a).   "No . . . provision in the West Virginia Code authorizes [a] sheriff's department to sue or be sued."   *Frye*, 2021 WL 243864, at *4.   Without such authorization, the Court is left to conclude that Defendant BCSO lacks the capacity to be sued and must be **DISMISSED**.

B.  Count I – Excessive Force

Having dismissed Defendant BCSO, the Court must now assess Plaintiff's claims, starting with Count I.   There, Plaintiff brings a host of excessive force claims against Defendant Daniels. Specifically, she alleges that Defendant Daniels violated her right to be free from excessive force, a right secured by the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, as well as unidentified provisions of the West Virginia Constitution.   (ECF No. 1 at 7–9, ¶¶ 40–48.)   Defendant Daniels takes no issue with her invoking the Fourth Amendment, but he strenuously contends that no other constitutional provision, State or federal, applies here. (ECF No. 17 at 5–8.)   The Court addresses each provision in order, starting with the federal constitutional amendments and ending with their State counterparts.

1.  Federal Constitution

Plaintiff's federal constitutional claims are brought by way of 42 U.S.C. § 1983, which "imposes liability on anyone who, under color of state law, deprives a person 'of any rights,

privileges, or immunities secured by the Constitution and [federal] laws.'"  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).

### a.   Eighth Amendment

The Court can easily dispose of Plaintiff's Eighth Amendment claim.  The Eighth Amendment bars States from inflicting "cruel and unusual punishments."  U.S. Const. amend. VIII.  However, as powerful as this protection may be, its scope is somewhat limited: the Amendment protects only those individuals already convicted of crimes.  *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (finding that "the Eighth Amendment has no application" where "there ha[s] been no formal adjudication of guilt"); *United States v. Hall*, 551 F.3d 257, 273 n.19 (4th Cir. 2009).  Because Plaintiff here was a free citizen—who had not been convicted of any crime—she cannot bring an Eighth Amendment claim, a conclusion she concedes.  (ECF No. 18 at 9 n.4.)

### b.   Fourteenth Amendment

Plaintiff's Fourteenth Amendment claim is a little trickier.  Defendant Daniels argues that she cannot bring a Fourteenth Amendment excessive force claim because the Fourth Amendment alone applies here.  (ECF No. 17 at 7–8.)  Addressing this argument requires the Court to first review the two Amendments and then unpack the caselaw discussing the interplay between them.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV. A "seizure" for Fourth Amendment purposes includes taking a citizen into police custody, *see California v. Hodari D.*, 499 U.S. 621, 624 (1991), and a seizure is "unreasonable" if "effectuated by excessive force," *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting *Schultz*

*v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006)).   The Fourteenth Amendment's Due Process Clause, meanwhile, provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law."   U.S. Const. amend XIV, § 1.   The Supreme Court has interpreted the Due Process Clause to "guarantee[] more than fair process."   *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997).   The Clause also contains a substantive component, colloquially known as "substantive due process," which "provides heightened protection against government interference with certain fundamental rights and liberty interests."   *Id.* at 720; *see also County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (explaining that the Due Process Clause "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them") (internal quotation marks omitted) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).   One such liberty interest is the right to be free from arbitrary government action, *i.e.*, "the exercise of power without any reasonable justification."   *Lewis*, 523 U.S. at 846.

For a brief period in time, many lower courts used neither amendment when analyzing excessive force claims.   *Graham v. Conner*, 490 U.S. 386, 393 (1989).   They instead assumed there was a stand-alone, "generic 'right' to be free from excessive force, grounded not in any particular constitutional provision but rather in 'basic principles of § 1983 jurisprudence.'"   *Id.* But, when push came to shove, the Supreme Court rejected this analytical approach to excessive force claims.   The Court explained that "§ 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."   *Id.* at 393–94 (internal quotation marks omitted) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).   Thus, when analyzing excessive force claims brought under § 1983, the "analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of

9

force." *Id.* at 394.  If a "specific constitutional provision," such as the Fourth Amendment, protects that right, then the excessive force "claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" (quoting *Graham*, 490 U.S. at 395)).

That much resolves this issue.  Plaintiff alleges that Defendant Daniels took her into custody, thereby seizing her, and that he unreasonably battered her while doing so.  These allegations easily translate into an excessive force claim cognizable under the Fourth Amendment. *Myers v. City of Clendenin*, 600 F. Supp. 3d 626, 634 (S.D. W. Va. 2022) ("The Fourth Amendment protects . . . against officers' use of excessive force in effecting a seizure" (quoting *Redding v. Boulware*, 501 F. App'x 238, 242 (4th Cir. 2012) (unpublished))). Further, because the Fourth Amendment "provides an explicit textual source of constitutional protection' against" Defendant Daniels' alleged misconduct, the Fourth Amendment applies to the exclusion of the Fourteenth Amendment.  *Albright*, 510 U.S. at 273; *see also Graham*, 490 U.S. at 395 (holding "that *all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach" (emphasis in original)).

Plaintiff disagrees. In her view, *Graham* "does not necessarily bar [her] Fourteenth Amendment claim." (ECF No. 18 at 9.) This is so, she says, because *Lewis* permits a "Fourteenth Amendment claim [where the] government[] [acted] arbitrari[ly] and in [a manner] that shock[s] the conscience." (*Id.*) Because, on her telling, Defendant Daniels' alleged actions satisfy that demanding standard, Plaintiff believes her Fourteenth Amendment claim is proper.

The Court disagrees for two reasons. First, Plaintiff relies exclusively on language from *Lewis*' syllabus, which is of no authoritative value whatsoever. *See United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 337 (1906). Second, and turning to the substance, *Lewis* itself is easily distinguishable. There, the Court found that the police misconduct complained of was neither a search nor a seizure, so the Fourth Amendment's protections were never triggered. 523 U.S. at 843. Since the Fourth Amendment did not apply, the Court found that "*Graham*'s more-specific-provision rule [was] no bar to" the plaintiff's Fourteenth Amendment claim. *Id.* at 844. Here, by contrast, the parties agree that Defendant Daniels seized Plaintiff—an act that triggered the Fourth Amendment and, by extension, *Graham*'s explicit-textual-source rule. *Lanier* thus has no role to play here.

2. West Virginia Constitution

Plaintiff's claims under the West Virginia Constitution are vague, to put it lightly. In her complaint, Plaintiff does not identify any specific State constitutional provision(s) allegedly infringed; she relies on unnamed "doctrines adopted by the State of West Virginia" that are "similar" to § 1983.[7] (ECF No. 1 at 9, ¶ 48.) The parties' briefing suggests that her claims are premised upon Article III, Section 6 and Article III, Section 10 of the West Virginia Constitution.

---

[7] The Court assumes without deciding that such vague language is sufficient to put a defendant on notice of the claims levied against them.

11

(ECF No. 17 at 5–6; ECF No. 18 at 7–8.)  Unfortunately for Plaintiff, to the extent she relies upon these provisions, neither are privately enforceable.

These two State provisions mirror their federal counterpart.  Article III, Section 6 of the West Virginia Constitution ("Section 6") tracks the Fourth Amendment and prohibits unreasonable searches and seizures: "The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated."  Article III, Section 10 of the West Virginia Constitution ("Section 10") likewise tracks the federal Due Process Clause: "No person shall be deprived of life, liberty, or property, without due process of law."

However, unlike federal law, West Virginia has no enabling statute akin to § 1983.  *See generally Fields v. Mellinger*, 851 S.E.2d 789 (W. Va. 2020).  Without such an enabling statute, plaintiffs cannot bring a private cause of action seeking monetary relief for State constitutional violations unless (1) the constitutional provision expressly grants one, or (2) the constitutional provision contains an implied cause of action.  *Id.* at 793, 795–99.

The Supreme Court of Appeals of West Virginia has already addressed whether Sections 6 or 10 satisfy either standard.  In *Fields*, the Court first found that Section 6 did not expressly grant a private cause of action, nor did it meet the rigorous requirements to find an implied cause of action.  851 S.E.2d at 792, 799.  As a result, the Court held that citizens, though protected by Section 6, cannot bring a claim for a violation of Section 6.  *Id.* at 799.  Then, in *Stepp v. Cottrell*, West Virginia's high court addressed the question *Fields* left open: since Section 6 provides no private of action to redress excessive force used during a police seizure, may a plaintiff bring a Section 10 due process claim to redress that harm?  874 S.E.2d 700, 702 (W. Va. 2022).  The

12

*Stepp* Court answered that question in the negative, finding that Section 10, much like its federal counterpart, has no role to play in excessive force claims arising from police seizures.[8]  *Id.* at 708.

For these reasons, the Court finds that Plaintiff is foreclosed from seeking any relief under Sections 6 or 10 of Article III of the West Virginia Constitution.

C.  Count III – Vicarious Liability

Next up is Count III, Plaintiff's "vacarious [sic] liability" claim, which is levied against Defendant BCC.   Count III, after realleging and incorporating the facts and Counts I and II (both of which were excessive force claims only), states the following:

> 64. Defendant Daniels, at all times relevant to the allegations set forth in this Complaint, was acting under the color of [his] law enforcement duties as empowered by the Defendants BCC and BCSD.

> 65. Upon information and belief, Defendants BCC and BCSD are and were at all relevant times the employer, in fact and under the law, of Defendant Daniels.

> 66. Defendants BCC and BCSD are therefore vicariously liable for the actions, inactions, harm, negligence, and malpractice of Defendant Daniels.

(ECF No. 1 at 12–13, ¶¶ 64–66.)

Count III fails to state a claim because a county commission cannot be held vicariously liable for a sheriff's deputy's constitutional violation.[9]  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."); *Estate of Jones v. City of Martinsburg*, 961 F.3d 661, 672 (4th Cir. 2020).

---

[8] Specifically, the *Stepp* Court adopted the explicit-textual-source rule laid down in *Graham* and *Lanier* and found that only Section 6—not Section 10—applies to excessive force claims arising from police seizures.   874 S.E.2d at 708.   The Court further held that a Section 10 claim is redundant and must fail where a "Plaintiff[] also allege[s] an Article III, Section 6 claim but [is] no longer allowed to pursue Article III, Section 6 as an avenue for relief" in light of *Fields*.   *Id.*

[9] Plaintiff's vicarious liability claim cannot be read to include Plaintiff's battery claim because the former precedes the latter, and the Federal Rules do not allow incorporation of claims presented later in the complaint.   5A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1326 (4th ed., Apr. 2023 update).

Instead, a county commission can be held liable for constitutional injuries via § 1983 only when the county commission itself inflicts the constitutional injury by adopting a custom or policy, which is the moving force behind the constitutional injury.   *See Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).   Here, Plaintiff has not pled any facts to show that Defendant BCC caused her constitutional injuries; she is only trying to hold Defendant BCC vicariously liable for Defendant Daniels' alleged Fourth Amendment violations.   That, she cannot do.

Plaintiff offers much in response but none of it is true.   She argues that, rather than trying to hold Defendant BCC vicariously liable, she is trying to bring a *Monell* claim and hold Defendant BCC liable for its own wrongs.   In support, she first claims that Count III "is specifically titled 'Monell Liability Defendant[] Boone County Commission.'"   (ECF No. 18 at 10.)   It's not.   She next claims that Count III "alleges reckless conduct and deliberate indifference in violation of clearly established constitutional rights and laws by Defendant[] Boone County Commission." (*Id.*)   It does not.   To the contrary, and as shown above, Count III clearly alleges that Defendant Daniels committed constitutional violations while acting as a Boone County Sheriff's Deputy and, because of that, Defendant BCC is vicariously liable.   Finally, sticking with this incorrect tack, Plaintiff claims that her "Complaint adequately pleads and proves the existence of official policies and customs attributable to Defendant[] BCC." (*Id.* at 11.)   The Court disagrees. Plaintiff never used the words "policy" or "custom" in her complaint, much less identified one and described how it allegedly caused her injuries.[10]

---

[10] Plaintiff argues that her mentioning two other lawsuits filed against Defendant Daniels, where he was "accused of [using] excessive force," was sufficient to establish a *Monell* claim.   (ECF No. 18 at 4.)   Such passing references do not cut it.   *Frye*, 2021 WL 243864, at *8 ("A passing reference to an isolated lawsuit in which no liability was established or admitted is hardly sufficient to support a . . . *Monell* claim, and it certainly does not satisfy the pleading requirements of *Twombly* and *Iqbal*.").

D.  Count V – Assault

Having dealt with Plaintiff's constitutional claims, the Court now turns to her state-law claims.   In Count V, Plaintiff alleges that Defendant Daniels assaulted and battered her. Defendant Daniels does not challenge her battery claim; he only seeks dismissal of Plaintiff's assault claim, arguing that she failed to allege the necessary elements.   (ECF No. 17 at 17–18.)

West Virginia follows the *Restatement (Second) of Torts* for assault and battery.   *W. Va. Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 495 (W. Va. 2004).   Under this approach, assault and battery are separate torts, and a defendant can commit one without committing the other.   *Weigle v. Pifer*, 139 F. Supp. 3d 760, 776 (S.D. W. Va. 2015).   Whether a defendant is liable for battery largely depends on whether he made a harmful or offensive contact with the plaintiff:

> An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) *a harmful contact with the person of the other directly or indirectly results*.

*Stanley*, 602 S.E.2d at 494 (emphasis added) (quoting Restatement (Second) of Torts § 13 (1965)). Assault, by contrast, hinges on whether the plaintiff perceived the impending harmful or offensive contact before it happened:

> An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) *the other is thereby put in such imminent apprehension*.

*Id.* at 495 (emphasis added) (quoting Restatement (Second) of Torts § 21 (1965)); *see also Apprehension*, Black's Law Dictionary (11th ed. 2019); *Imminent*, Black's Law Dictionary (11th ed. 2019).   If the plaintiff never perceived the harmful or offensive contact before it happened, no

assault occurred.   *Dial v. Higginbotham*, No. 3:22-cv-0316, 2023 WL 2434293, at *5–6 (S.D. W. Va. Mar. 9, 2023).

That's where Plaintiff's assault claim falters: she never alleged that she was placed in imminent apprehension of a harmful or offensive contact.   To be sure, she did not have to invoke the "magic words" "imminent apprehension" to plead an assault claim, *Stanton v. Elliott*, 25 F.4th 227, 238 (4th Cir. 2022), but she did need to provide some factual allegations showing that she recognized and feared Defendant Daniels would hit, pepper spray, or otherwise touch her.   She never did so.   A fair reading of her complaint instead reveals that Plaintiff was having a mental health crisis and was thus unable to perceive and understand the situation she was in—including that Defendant Daniels was allegedly battering her.   Plaintiff offers no cogent argument to the contrary,[11] so the Court concludes that she failed to plead an assault claim against Defendant Daniels.

E.  Count VII – Negligence

That leaves Count VII.   In Count VII, Plaintiff alleges that "Defendant Daniels was negligent in the performance of his duties within the scope of his employment and such negligence was the proximate cause of [her] injuries."   (ECF No. 1 at 16, ¶ 86.)   She further alleges that, "[b]ecause [Defendant Daniels'] negligent actions . . . occurred within the scope of his employment, Defendant[] BCC . . . [is] liable for his actions under the doctrine of respondeat

---

[11] Instead of defending her assault claim, Plaintiff devoted the pertinent part of her response brief to arguing that she had adequately alleged battery against Defendant Daniels—an issue nobody raised.   (ECF No. 18 at 16–17 (arguing that the "single allegation that [Defendant] Daniels attempted and threatened to inflict bodily harm on Plaintiff" is "sufficient" to state a battery claim)).   Even if Plaintiff mistakenly used the word "battery" when she meant to say "assault," she would still be incorrect: assault turns not on whether the defendant did something threatening but, instead, on whether the plaintiff perceived the threat.

superior." (*Id.*) Importantly, Plaintiff does not identify what alleged actions or inactions were negligent.

The elements of a West Virginia negligence claim are well-established: the plaintiff must prove the defendant (1) owed her a duty, (2) breached that duty, and (3) that breach proximately caused her injuries. *Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016) (quoting *Webb v. Brown & Williamson Tobacco Co.*, 2 S.E.2d 898, 899 (W. Va. 1939)).

However, "not all tortious acts [that] injure a plaintiff constitute negligence." *Weigle*, 139 F. Supp. 3d at 779; *see also Criss v. Criss*, 356 S.E.2d 620, 622 (W. Va. 1987) (acknowledging the difference between intentional torts and negligence). Indeed, intentional torts and negligence are mutually exclusive. *Waters v. Blackshear*, 591 N.E.2d 184, 185 (Mass. 1992) (recognizing "the established principle that intentional conduct cannot be negligent conduct and that negligent conduct cannot be intentional conduct"). When differentiating between intentional acts and mere negligence, courts "examin[e] the subjective intent of the alleged tortfeasor." *Weigle*, 139 F. Supp. 3d at 780. An actor commits an intentional tort, as opposed to negligence, when he "intend[s] 'the consequences of an act,' not simply 'the act itself.' "" *Id.* (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)); *see also Groves v. Groves*, 158 S.E.2d 710 (W. Va. 1968) (""Negligence conveys the idea of heedlessness, inattention, inadvertence; willfulness . . . convey[s] the idea of purpose or design, actual or constructive." (quoting *Thomas v. Snow* 174 S.E. 837, 839 (Va. 1934))). In other words, intentional torts are purposeful; negligence is accidental. *See McKenzie v. Sevier*, 854 S.E.2d 236, 246 (W. Va. 2020).

Here, Plaintiff's negligence claim must be dismissed because she did not allege any negligent conduct. She instead alleged that Defendant Daniels repeatedly—and intentionally—

17

beat her, hoping to pummel her into submission.   That, of course, is battery, an intentional tort.
*McKenzie*, 854 S.E.2d at 246.   Nowhere in her complaint does she identify or allege a single
negligent act by Defendant Daniels.   The closest she comes is her conclusory statement that he
"was negligent in the performance of his duties."   (ECF No. 1 at 16, ¶ 86.)   However, it is well-
settled that conclusory statements are not entitled "to the presumption of truth," *Iqbal*, 556 U.S. at
681, and describing intentional conduct as "negligent" does not make it so, *Weigle*, 139 F. Supp.
3d at 780 ("[A] mere allegation of negligence does not turn an intentional tort into negligent
conduct." (quoting *Benavidez v. United States*, 177 F.3d 927, 931 (10th Cir. 1999))); *cf. Air Evac
EMS., Inc. v. Dodrill*, 548 F. Supp. 3d 580, 592 (S.D. W. Va. 2021) ("[S]imply saying
the sky is green does not make the sky green and simply calling something insurance does not
make it insurance.").   Also, because Plaintiff has not pled a viable negligence claim against
Defendant Daniels, her negligence claim against Defendant BCC—which is premised solely on
*respondeat superior*—fails as well.   *Weigle*, 139 F. Supp. 3d at 780.

Plaintiff disputes these conclusions, too.   She says that whether Defendant Daniels acted
intentionally or negligently is a "question[] of fact for the jury," so her negligence claim cannot be
"premature[ly] dismiss[ed] . . . before discovery has even commenced."   (ECF No. 18 at 15.)
Plaintiff ignores basic civil procedure.   The Federal Rules require litigants to plead enough
"factual allegations" to show that they are "entitled to relief" for each claim.   *Twombly*, 550 U.S.
at 555–56.   This requirement applies no less when pleading in the alternative, *see Feeley v. Total
Realty Mgmt.*, 660 F. Supp. 2d 700, 711–12 (E.D. Va. 2009), so Plaintiff here needed to include
some factual allegations showing negligent conduct.   She did not.   And because courts must
dismiss claims that, like hers, fail to plead sufficient facts to state a claim, *see Corder v. Antero*

*Res. Corp.*, 57 F.4th 384, 401 (4th Cir. 2023), a claim cannot fairly be considered "prematurely dismissed" when it was never properly pled in the first place.

Nor can Plaintiff reasonably believe she is entitled to discovery to develop her deficient claim.   It is well-settled that improperly pled claims "do[] not unlock the doors of discovery." *Iqbal*, 556 U.S. at 678–79; *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) ("[T]here is no general right to discovery upon filing of the complaint.").   Litigants can only proceed to discovery once they have satisfied Rule 8 and stated a claim for relief.   *McCants v. Tolliver*, No. 1:11-cv-0664, 2011 WL 2893058, at *6 (N.D. Ohio July 15, 2011) ("[W]hen a plaintiff files a complaint that fails to state a claim as a matter of law, [s]he cannot complain that [s]he is entitled to discovery to state h[er] claim.   In the absence of a cognizable claim, Plaintiff has no right to any discovery.").   Plaintiff has not, so she cannot.

## IV.      CONCLUSION

For the foregoing reasons, the Boone County Defendant's partial motion to dismiss is **GRANTED**.   Defendants BCC and BCSO are **DISMISSED** from this action.   Further, Counts III and VII are **DISMISSED** in their entirety.   Count I is **DISMISSED** to the extent it seeks redress under the Eighth and Fourteenth Amendment of the United States Constitution and Article III, Section 6 and Article III, Section 10 of the West Virginia Constitution.   Count V is likewise **DISMISSED** to the extent it purports to bring an assault claim.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        April 30, 2024

_____
THOMAS E. JOHNSTON, CHIEF JUDGE

20